No. 3--96--0178

                                  IN THE 

                        APPELLATE COURT OF ILLINOIS

                              THIRD DISTRICT

                                A.D., 1996

IN THE MATTER OF REBECCA      )  Appeal from the Circuit Court

JONES, a/k/a Bekki Keene      )  of the 10th Judicial Circuit

Kennedy (A Person Found       )  Peoria County, Illinois

Subject to Administration of  )

Medication)                   )

                              )

PEOPLE OF THE STATE OF        )

ILLINOIS,                     )

                              )

     Petitioner-Appellee,     )

                              )

     v.                       )  No. 96--MH--32

                              )

REBECCA JONES, a/k/a Bekki    )

Keene Kennedy,                )  Honorable

                              )  E. Michael O'Brien,

     Respondent-Appellant.    )  Judge Presiding.

_________________________________________________________________

JUSTICE MICHELA delivered the opinion of the Court:

_________________________________________________________________

     The petitioner-appellee, the State, filed a petition to

involuntarily administer psychotropic medication to the respondent-

appellant, Rebecca Jones, a/k/a Bekki Keene Kennedy (Jones).  The

trial court granted the petition finding that Jones suffered from

a serious mental illness and that the State satisfied the

requirements of section 2--107.1 of the Mental Health and

Developmental Disabilities Code (405 ILCS 5/2-107.1 (West 1994)). 

Jones appeals arguing, inter alia, the State failed to present

clear and convincing evidence in support of its petition.  We agree

and reverse.

     The limited record in this case reveals the following

pertinent facts.  Jones was residing in the Danville area when the

local police served her with eviction papers at her apartment.  The

officers believed that Jones was acting in a bizarre manner and not

taking care of her needs.  Thus, they transported her to Good

Samaritan Hospital for observation.  She was admitted there and

subsequently committed for a period of 180 days.  It was reported

that she refused to comply with treatment and that the hospital

staff was unable to handle her.  Thus, she was transferred to

Zeller Mental Health Center on January 24, 1996.

     On January 30, 1996, the State filed a petition to administer

psychotropic medication to Jones.  The trial court set the hearing

for January 31, 1996, required notice be sent to appropriate

parties, and appointed counsel to represent Jones.  Jones was

personally served with notice on January 31, 1996.  Both she and

her counsel were present at the hearing on January 31, 1996.  Her

counsel did not object to the timeliness of the notice nor did he

make a showing as to any prejudice his client would suffer from

such short notice.

     The State called Dr. Pratap Attaluri, a psychiatrist at

Zeller, as its only witness in the case.  Dr. Attaluri stated he

was assigned as the treating physician for Jones in this matter. 

He examined Jones on January 24, 1996 and found her to be loud,

disruptive and delusional.  According to Dr. Attaluri, Jones

believes her name is Mrs. Kennedy and that she has been married to

John F. Kennedy, Jr.  She also believes she is an FBI agent

involved in the Waco incident.  Further, Jones told Dr. Attaluri

that she could not take medication because it would adversely

affect her multiple cancers.  From this, Dr. Attaluri testified

that Jones had no insight and impaired judgment.

     Dr. Attaluri diagnosed Jones as suffering from personality

changes secondary to a general medical condition, specifically a

head injury.  Dr. Attaluri believed that a head injury which

occurred 30 years ago was the cause of Jones' mental illness.  Dr.

Attaluri proscribed Depakote, Haldol and Cogentin to treat Jones'

mental illness.  However, Dr. Attaluri stated that Jones refused

the medication in fear of an allergic reaction.  Dr. Attaluri

testified that Jones was administered similar medication at

Danville but then refused the medication because she complained of

unpleasant side effects.  According to Dr. Attaluri, there are

potential side effects to these medications, such as tremors,

rigidity and dryness of the mouth, but that such side effects could

be controlled through the administration of companion medications. 

Further, Jones would be closely monitored for any physical reaction

to the medication.

     The following testimony completed Dr. Attaluri's direct

examination:

               "Q.  Would it be your medical judgment

          that the possible benefits of the medication

          would outweigh any of the potential physical

          side effects of the medication?

               A.  Yes, I do believe that.

               Q.  Does the patient have the ability to

          make a reasoned decision in regards to taking

          the medication in your judgment at this time?

               A.  No.

               Q.  Is there any less intrusive means of

          treating the patient at this time?

               A.  Not at this time."

               Jones testified that she did not want to take this medication

because she had doctor's orders not to because it would kill her. 

She stated she experienced seven hours of trauma at Danville when

medication was forced upon her.  She offered no other cogent

testimony into either her illness or her desire to refuse medical

treatment.

     The trial court then granted the petition and authorized

Zeller to administer psychotropic medication to Jones for a period

of 90 days.  The trial court found that Jones suffered from a

serious mental illness, that there had been a deterioration of her

ability to function, that she had been loud, disruptive and

delusional, and that she lacked insight, had impaired judgment and

was unable to care for herself.  The court further found that this

illness had existed for a considerable period of time, that the

benefits of administering psychotropic medication outweighed the

harm, that Jones lacked capacity to make a reasoned decision about

the medication, and that other less restrictive services had been

found inappropriate.  The trial court did not specifically utilize

a "substituted judgment" approach when reaching its decision. 

Jones appeals.

     On appeal, Jones first argues that her due process rights were

violated procedurally because of a lack of formal notice of the

hearing.  In In re C.E., our supreme court held that formal notice

under a section 2--107.1 petition is not necessary if the recipient

and his attorney received actual notice of the proceedings and were

provided ample opportunity to respond to the arguments made.  In re

C.E., 161 Ill. 2d 200, 226-27, 641 N.E.2d 345, 357 (1994). 

However, it is incumbent upon the recipient to demonstrate

prejudice by the absence of formal notice.  In re C.E., 161 Ill. 2d

200, 226-27, 641 N.E.2d 345, 357 (1994).  In the present case, the

record reveals that both Jones and her attorney received actual

notice of the proceedings.  However, we find that actual notice of

one day did not sufficiently afford counsel an opportunity to

prepare.  It was therefore incumbent upon Jones to demonstrate that

she was prejudiced by the absence of formal notice.  However, her

attorney made no such argument to the trial court.  Short notice

alone is insufficient to constitute prejudice per se.  Since Jones

did not claim she was prejudiced by the absence of formal notice,

and since we are unable to find any prejudice on the present

record, Jones' argument must fail.  See In re C.E., 161 Ill. 2d at

227, 641 N.E.2d at 357. 

     Jones next argues the trial court committed reversible error

by failing to apply a "substituted judgment" standard to the matter

at hand.  She argues the trial court was required to give deference

to her wishes to refuse psychotropic medication.  Under the

substituted judgment analysis, the surrogate decision-maker

attempts to establish, with as much accuracy as possible, what

decision the patient would make if he or she were competent to do

so.  In re C.E., 161 Ill. 2d at 220, 641 N.E.2d at 354; In re

Estate of Longeway, 133 Ill. 2d 33, 49, 549 N.E.2d 292, 299 (1989). 

Thus, in the present case, our inquiry is whether Jones clearly

proved that her desire to refuse psychotropic medication was

competently made.  In re Israel, 278 Ill. App. 3d 24, 34, 664

N.E.2d 1032, 1038 (1996).

     At the hearing, the testimony of Dr. Attaluri established that

Jones was suffering from a mental illness and was delusional.  The

evidence further indicated that Jones' objections concerning the

medications were not rational.  While Jones offered specific

reasons for refusing the medical treatment, we find that such

evidence does not render her testimony "clear" evidence of her

competent wishes concerning the administration of medication.  See

In re Israel, 278 Ill. App. 3d at 34, 664 N.E.2d at 1038; In re

Schaap, 274 Ill. App. 3d 497, 502-03, 654 N.E.2d 1084, 1087-88

(1995).  Thus, we find the trial court did not err by failing to

apply the "substituted judgment" test. 

     Jones finally argues the State failed to prove by clear and

convincing evidence the factors required under section 2--107.1(d)

of the Mental Health and Developmental Disabilities Code (405 ILCS

5/2-107.1 (West 1994)).  Section 2--107.1(d) delineates the

nonemergency circumstances under which psychotropic medication may

be administered against the wishes of the recipient.  Section 2--

107.1(d) directs that forced administration of psychotropic

medication is only authorized if the court finds evidence of each

of the following elements, by clear and convincing proof:

             "(1) That the recipient has a serious

          mental illness or developmental disability.

             (2) That because of said mental illness or

          developmental disability, the recipient

          exhibits deterioration of his ability to

          function, suffering, or threatening or

          disruptive behavior.

             (3) That the illness of disability has

          existed for a period marked by the continuing

          presence of the symptoms set forth in

          paragraph (2) [above] or the repeated episodic

          occurrence of these symptoms.

             (4) That the benefits of the psychotropic

          medication will outweigh the harm.

             (5) That the recipient lacks the capacity

          to make a reasoned decision about the

          medication.

             (6) That other less restrictive services

          have been explored and found inappropriate." 

          405 ILCS 5/2--107.1(d) (West 1994).

               Clear and convincing evidence is defined as the quantum of

proof which leaves no reasonable doubt in the mind of the fact

finder as to the veracity of the proposition in question.  Bazydlo

v. Volant, 164 Ill. 2d 207, 647 N.E.2d 273 (1995).  As a reviewing

court, we give great deference to the trial court's factual

findings because the court stands in the best position to weigh the

credibility of all the witnesses; thus we will disturb the trial

court's decision only if it is manifestly erroneous.  In re

Jeffers, 239 Ill. App. 3d 29, 606 N.E.2d 727 (1992).

     In the instant case, we find the State only proved by clear

and convincing evidence that Jones suffered from a serious mental

illness, Jones lacked capacity to make a reasoned decision and that

the benefits of administering psychotropic medication outweighed

its harm.  There is no evidence of actual suffering, loss of

ability to function or threatening behavior.  The record reveals

that her loud and disruptive behavior manifested itself only when

she was examined and medication was forced upon her.  Also, there

was no evidence submitted as to what other services were explored

and found inappropriate.  Accordingly, we find the trial court's

order to be manifestly erroneous.

     For the foregoing reasons, the order of the circuit court of

Peoria County is reversed.

     Reversed.

     HOLDRIDGE, P.J. and SLATER, J., concurring.